IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. CR11-2014 |
| vs. | REPORT AND RECOMMENDATION |
| ASA ADAMS, | |
| Defendant. | |

## TABLE OF CONTENTS

I. INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . 2

III. ISSUE PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV. RELEVANT FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

V. DISCUSSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
   A.   Alleged Fourth Amendment Violation. . . . . . . . . . . . . . . 6
       1.   Did Officer Hereid Have Authority to Pat Down
           Defendant?. . . . . . . . . . . . . . . . . . . . . . . . . . 6
       2.   Was the Traffic Stop Unduly Prolonged?. . . . . . . . . . . . 8
   B.   Alleged Failure to Mirandize Defendant. . . . . . . . . . . . . 12

VI. RECOMMENDATION. . . . . . . . . . . . . . . . . . . . . . . . . . 12

## I. INTRODUCTION

On the 29th day of April 2011, this matter came on for hearing on the Motion to Suppress (docket number 16) filed by the Defendant on April 8, 2011. The Government

1

was represented by Assistant United States Attorney Richard L. Murphy. Defendant Asa Adams appeared in person and was represented by his attorney, Michael Lanigan.

## II. PROCEDURAL HISTORY

On February 15, 2011, Defendant Asa Adams was charged by Indictment with one count of being an unlawful drug user in possession of a firearm. At the arraignment on March 11, 2011, Defendant entered a plea of not guilty and trial was scheduled for May 9, 2011. On Defendant's motion, the trial was subsequently continued to June 13, 2011.

On April 8, 2011, Defendant timely filed the instant motion to suppress. The Government filed its resistance on April 15, 2011.

## III. ISSUE PRESENTED

Defendant claims that his Fourth Amendment rights were violated during a traffic stop which resulted in a handgun being found in his vehicle. Defendant also claims that he was not *Mirandized* prior to statements being made by him.

## IV. RELEVANT FACTS

On October 27, 2010, Officer Drew Hereid of the Waterloo Police Department was on routine patrol. Hereid had only been with the Waterloo Police Department since April 2010, and he was accompanied that evening by Officer Edward Savage, a field training officer. According to Savage, Hereid was in the third phase of a four-phase field training program. Prior to joining the Waterloo Police Department, Hereid completed a 13-week program at the Law Enforcement Academy. Hereid had no prior law enforcement experience.

At approximately 9:15 p.m., Officers Hereid and Savage conducted a traffic stop after they observed a vehicle making an improper turn. The stop was recorded by a camera located in the officers' squad car. A DVD of the recording was introduced as Government's Exhibit 1. The video portion of the recording starts 20 seconds prior to the

emergency lights being activated, with the audio portion beginning with the activation of the emergency lights.[1]

The recording begins with the officers sitting at a stop light behind the subject vehicle. The light changes to green approximately 18 seconds later, and the officers activated their emergency lights as soon as the subject vehicle started to move forward. While the record at the time of hearing was silent on the issue, both vehicles appear to be in the left lane on a two-lane, one-way street. Rather than stopping immediately, the subject vehicle moved to the right lane (signaling its lane change), and proceeded at a slow speed to the next corner, where it turned right and then stopped. In following the subject vehicle, the officers' speed never exceeded 22 miles per hour.[2] By the Court's calculation, the vehicle stopped less than 30 seconds after the emergency lights were activated.

After the subject vehicle stopped, Officers Hereid and Savage exited the squad car and approached the vehicle. Hereid advised Defendant, who was driving the vehicle, that he had been stopped for making an improper turn. Hereid asked Defendant to produce his driver's license, insurance, and registration. During this time, Savage was looking in the vehicle from the passenger side.

At approximately 1 minute and 30 seconds into the stop, Officer Hereid called dispatch to check on the validity of the Mississippi driver's license produced by Defendant. Hereid then asked the passenger (co-Defendant Walter Jones) if he had identification. Jones also produced Mississippi identification. Approximately 3-1/2 minutes into the stop, Officer Savage returned to the squad car and called dispatch to check for active arrest warrants. Savage can be heard on the in-car audio talking to dispatch and saying "he just

---

[1] Officer Savage testified he believed the equipment recorded for 30 seconds prior to the emergency lights being activated, but a review of the recording suggests it was 20 seconds. However, the distinction is not particularly relevant here.

[2] The speed of the officers' vehicle is reflected by the recording.

3

sounds familiar." The officers were apparently advised, however, that Defendant's driver's license was valid and there were no warrants outstanding for either occupant.

Approximately 5-1/2 minutes into the stop, Officer Hereid can be heard apologizing to Defendant for the delay. For unknown reasons, Officer Savage apparently had difficulty getting information on the vehicle, which was registered in Iowa. Approximately one minute later, Officer Steven Bose, who responded separately to the scene, can be seen in the video, walking up on the passenger side of the subject vehicle. Hereid asked Bose to see if Savage "has found anything out." At approximately eight minutes into the stop, Hereid walked back to the squad car and discussed how to proceed with Savage.

Officer Savage testified that as a training officer, part of his job is to ask the officer being trained what he is thinking. Savage and Officer Hereid had the following conversation:[3]

>SAVAGE: How do you want to roll this one?
>
>HEREID: Well, I'm not smelling anything. Their eyes are clear as hell.
>
>SAVAGE: What are they doing up here?
>
>HEREID: One guy is leaning forward and the other guy is texting and keeping his hands high.
>
>SAVAGE: Yeah, but what are they doing up here in Waterloo?
>
>HEREID: Oh, they moved up here.
>
>SAVAGE: Well, what do you feel like doing?
>
>HEREID: I'm going to pull them and see if I can get a consent.

---

[3] The conversation set forth below represents the Court's understanding of the audio recording. No transcript was produced.

4

The officers then discussed that they had observed a couple of "blunts"[4] and "a bottle of booze" in a paper bag, but one of the officers added that "I don't think it's open."

Approximately 9-1/2 minutes into the stop, all three officers returned to the subject vehicle. Officer Hereid handed the identification cards back to both occupants. Hereid then asked Defendant "would you like to step out for a second?" The Defendant complied. Hereid then said: "I'm going to check you for weapons. Do you have anything on you that will hurt me?"[5] At approximately 9 minutes and 45 seconds into the stop, Defendant said "I have a gun."

After Defendant disclosed that he had a gun in the car, Officer Savage "took control" of Defendant and placed him in handcuffs, but advised him that he was not under arrest. Savage can be seen on the video recording, walking Defendant back to the squad car. Savage can be seen talking to Defendant, but the audio recording does not pick up their conversation.[6] After about 30 seconds, Defendant can be heard being placed in the squad car. Savage testified that it was during that time – immediately before Defendant

---

[4] According to the testimony, a blunt is a hollowed-out cigar, which is then filled with marijuana. In this case, however, it turned out that the cigar stubs observed by the officers did not contain marijuana.

[5] In his incident report, which was prepared a few hours after these events, Officer Hereid wrote that he asked Defendant if "I could search him," and Defendant responded "yes." Hereid acknowledged on cross-examination that the representation was false and constituted a "great error." Hereid attributed the misstatement to the fact that "I was new and I had just found two guns in a vehicle and just how fast everything was moving at that point." Obviously, it is critical that law enforcement officers accurately recount the facts surrounding a vehicle stop, particularly when it involves consent to search. Fortunately, the events in this case were recorded, and Government's Exhibit 1 provides the Court with an accurate reflection of the events.

[6] According to Officer Savage, the recording system used by the Waterloo Police Department provides a microphone in the squad car and a microphone on the officer's body. The system does not, however, have "dual capacity." That is, since Officer Hereid had a body microphone, it was not possible for Savage to have a body microphone.

was placed in the squad car – that Savage advised Defendant of his *Miranda* rights. According to Savage, Defendant acknowledged that he understood his rights.

## V. DISCUSSION

### A. Alleged Fourth Amendment Violation

#### 1. Did Officer Hereid Have Authority to Pat Down Defendant?

Defendant first asserts that his "Fourth Amendment right to be free from unreasonable search and seizure was violated during the traffic stop of his vehicle."[7] Specifically, Defendant argues that he could not be subjected to a "*Terry* pat-down" because there was no reason to believe that he was armed and dangerous.

Initially, it should be noted that Defendant does not contest the validity of the traffic stop.[8] *See United States v. Jones*, 275 F.3d 673, 680 (8th Cir. 2001) ("*any* traffic violation, regardless of its perceived severity, provides an officer with probable cause to stop the driver"). Defendant also concedes that Officer Hereid could order him to exit the vehicle.[9] *See Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977) ("[O]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures."). Instead, Defendant argues that he could not be subjected to a pat-down because the officers "did not have reasonable suspicion that Defendant was armed and dangerous."[10]

---

[7] *See* Defendant's Brief (docket number 16) at 3.

[8] "Defendant concedes that the traffic stop was lawful and he was seized for Fourth Amendment purposes." Defendant's Brief (docket number 16) at 3.

[9] "Defendant concedes that he may be ordered out of the vehicle in the interest of officer safety." Defendant's Brief (docket number 16) at 3.

[10] *See* Defendant's Brief (docket number 16) at 4.

6

In support of his argument, Defendant cites *Arizona v. Johnson*, 555 U.S. 323 (2009), and *United States v. Oliver*, 550 F.3d 734 (8th Cir. 2008). In *Johnson*, three police officers, who were working as members of a gang task force, conducted a routine traffic stop. One of the officers ordered a passenger out of the vehicle "to gain 'intelligence about the gang [he] might be in.'" *Id.* at _____, 129 S. Ct. at 785. The officer suspected that "he might have a weapon on him," so she "patted him down for officer safety." *Id.* A gun was found near the subject's waist. The Court confirmed that following a valid traffic stop, an officer may order an occupant out of the vehicle and perform a pat-down. The Supreme Court stated that the officers may conduct a pat-down of a driver and any passengers "upon reasonable suspicion that they may be armed and dangerous." *Id.* at _____, 129 S. Ct. at 787. The Eighth Circuit Court of Appeals recognized the same rule in *Oliver*, 550 F.3d at 738.

In the instant case, Defendant argues that Officer Hereid could not have a reasonable suspicion to believe that Defendant may be armed and dangerous and, therefore, could not conduct a pat-down search. While his brief is imprecise, Defendant apparently asserts that Hereid could not lawfully conduct a pat-down search when Defendant was initially asked to exit the vehicle. I believe that it is unnecessary to engage in a detailed analysis of that question, however, for a simple reason. Defendant was *not* patted down immediately upon exiting the vehicle. Instead, upon Defendant exiting the vehicle, Hereid advised Defendant that he was going to "check you for weapons," and asked if Defendant had "anything on you that will hurt me?" Before Hereid conducted any pat-down search, Defendant disclosed that "I have a gun." Defendant said the gun was in the car and started to reach for it. It was only then that Hereid patted Defendant down to check for additional weapons. In other words, Defendant was not patted down until *after* he had already admitted that he was armed. Once Defendant admitted having a gun, Hereid clearly had a reasonable suspicion that he may be armed and dangerous. It was not necessary for Hereid to take Defendant's word that the only gun would be found in the car.

7

I do not believe that Defendant was patted down unlawfully. *See Oliver*, 550 F.3d at 738 ("The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.") (citing *Terry v. Ohio*, 392 U.S. 1, 27 (1968)).

### 2. Was the Traffic Stop Unduly Prolonged?

It should be noted that Defendant does *not* argue in his motion or supporting brief that the traffic stop was unduly prolonged, nor does he cite any authority on that issue. In discussing whether the officers had authority to pat him down, Defendant makes an opaque reference in his brief to "the fact that the traffic stop had been processed."[11] Apparently out of an abundance of caution, the Government briefed the additional issue of whether the traffic stop was unconstitutionally extended. Defendant did not file any reply to the Government's brief, or cite any authority on the issue.

"A lawful traffic stop 'can become unlawful if it is prolonged beyond the time reasonably required to complete' the mission of the stop." *United States v. Hernandez-Mendoza*, 600 F.3d 971, 975 (8th Cir. 2010) (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). In conducting the traffic stop, however, the officer "may detain the offending motorist while the officer completes a number of routine but somewhat time-consuming tasks related to the traffic violation, such as computerized checks of the vehicle's registration and the driver's license and criminal history, and the writing up of a citation or warning." *United States v. $404,905.00 in U.S. Currency*, 182 F.3d 643, 647 (8th Cir. 1999). The officer may also inquire about "the occupants' destination, route, and purpose." *United States v. Sanchez*, 417 F.3d 971, 975 (8th Cir. 2005). "Whether a particular detention is reasonable in length is a fact-intensive question, and there is no *per se* time limit on all traffic stops." *United States v. Olivera-Mendez*, 484 F.3d 505, 510 (8th Cir. 2007).

---

[11] *See* Defendant's Motion and Brief (docket number 16) at 4.

Turning to the facts in the instant action, within less than ten minutes following his initial stop, Defendant's driver's license was returned to him. Most of that time was incurred while the officers checked on Defendant's out-of-state driver's license and the out-of-state identification provided by his passenger. The officers also apparently encountered some difficulty in obtaining information regarding the vehicle, which was licensed in Iowa. A small portion of the time was devoted to a discussion between Officer Hereid and Officer Savage, his training officer, regarding how to proceed. However, the extension to the stop for that purpose, if any, was minimal.

It could be argued – although it was not argued by Defendant here – that the stop was unduly prolonged when Officer Hereid asked Defendant to exit his vehicle after his driver's license had been returned. While Hereid had not announced his decision regarding whether to cite or warn Defendant for the unlawful turn, returning Defendant's driver's license suggests that Hereid did not intend to issue a citation. In fact, Hereid testified at the instant hearing that when considering his options that evening, he did not consider the issuance of a citation. If the stop had not been concluded, then Hereid's asking Defendant for a consent to search would not be violative of the Fourth Amendment. *United States v. Long*, 532 F.3d 791, 795 (8th Cir. 2008) ("Asking for consent to search does not violate the Fourth Amendment in the absence of coercive or otherwise unusual circumstances."). If the purpose of the traffic stop was complete, however, then "further detention of the driver or vehicle would be unreasonable, 'unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention' unless the continued encounter is consensual." *United States v. Flores*, 474 F.3d 1100, 1103 (8th Cir. 2007) (quoting *United States v. Jones*, 269 F.3d 919, 925 (8th Cir. 2001)). "If the encounter becomes consensual, it is not a seizure, 'the Fourth Amendment is not implicated, and the officer is not prohibited from asking questions unrelated to the traffic stop or seeking consent to search the vehicle.'" *United States v. Munoz*, 590 F.3d 916, 921 (8th Cir. 2010) (quoting *Flores*, 474 F.3d at 1103). Here, the

Government argues that the "reasonable suspicion" needed to justify further detention is provided by Defendant's failure to stop immediately, and the cups of ice, blunts, and a paper bag with "booze" observed in the vehicle.

Even if the stop had been concluded, the additional delay before Defendant announced that he had a gun was only a matter of seconds. A *de minimis* intrusion after a stop has been concluded does not violate the Fourth Amendment. *United States v. Mohamed*, 600 F.3d 1000, 1005 (8th Cir. 2010) ("[W]hen a dog sniff occurs after a very short lapse of time from when the purpose of the traffic stop has been completed, there is a *de minimis* intrusion, and therefore, under the general rule of reasonableness, the stop does not violate the Fourth Amendment.") (citing *$404,905.00*, 182 F.3d at 649). Once Defendant disclosed that he had a gun, then further delay was justified.

The Court also finds *United States v. Robinson*, 455 F.3d 832 (8th Cir. 2006), to be instructive. There, the defendant argued that the traffic stop had ended with a warning, the officers could lawfully continue to detain him only if they had a reasonable suspicion of criminal activity, and that the officers' continued questioning was therefore "an unreasonable detention that violated Robinson's Fourth Amendment rights." *Id.* at 834. In rejecting the defendant's argument, the Court noted that "[o]nce officer Hagerty decided to allow Robinson to depart with a warning, any subsequent detention or search was limited by the strictures of the Fourth Amendment." *Id.*, citing *$404,905.00*, 182 F.3d at 648. Importantly, however, the Court went on to say that "[t]his dividing line is artificial, however, and we do not find a constitutional violation if there was a *de minimis* intrusion beyond that point." *Id.*

> We apply an objective standard to determine whether there was a seizure. If a reasonable person in Robinson's circumstances would have felt free to leave, the exchange he had with Officer Finke was consensual and does not implicate the Fourth Amendment. We need not determine whether the conversation initiated by Officer Finke was consensual or coercive, however, and we need not decide whether reasonable

10

> suspicion existed to justify a seizure. Even assuming that Robinson is correct that Officer Finke's questions amounted to a seizure without reasonable suspicion, we have upheld seizures of less than ten minutes as *de minimis* intrusions that do not amount to an unreasonable seizure. . . . We thus conclude that, even if a suspicionless seizure occurred during the period from the conclusion of the lawful traffic stop until the officers unquestionably had probable cause, it was a *de minimis* intrusion that did not constitute an unreasonable seizure within the meaning of the Fourth Amendment.

*Id.* (internal citations omitted).

Thus, the encounter between Officer Hereid and Defendant at about the time Defendant was asked to exit the vehicle falls within one of four possibilities: First, *if* one finds that the traffic stop had not been concluded when Officer Hereid asked Defendant to exit the vehicle, then there was no constitutional violation. *Mimms*, 434 U.S. at 111. Second, *if* one finds that the stop had been concluded, but that Defendant voluntarily responded to Hereid's request to exit his vehicle, then the encounter is consensual and the Fourth Amendment is not implicated. *United States v. Morgan*, 270 F.3d 625, 630 (8th Cir. 2001). Third, *if* one finds that the traffic stop had ended, but Defendant reasonably felt compelled to exit the vehicle in response to Hereid's request, then further detention may be justified by a reasonable suspicion generated by Defendant's failure to stop immediately, and the officers' observations of cups of ice, blunts, and a paper bag with "booze" in the vehicle. *Flores*, 474 F.3d at 1103. Fourth, *if* one finds that the traffic stop had ended, Defendant agreeing to exit the vehicle was not consensual, and the officers lacked reasonable suspicion to detain Defendant further, the resulting intrusion was *de minimis* since Defendant almost immediately admitted that he had a gun. *Robinson*, 455 F.3d at 834. Therefore, in no event was there a Fourth Amendment violation.

In any event, Defendant did not argue in his motion or supporting brief that the stop was unduly prolonged. Furthermore, Defendant did not cite any authority in support of any possible argument in that regard. Accordingly, I believe that such an argument, if

any, has been waived.[12] Even if the issue had been properly raised by Defendant, however, I believe it is unmeritorious.

### B. Alleged Failure to Mirandize Defendant

The second issue raised in Defendant's motion and brief is the alleged failure to provide him with a *Miranda* warning prior to a custodial interrogation. Clearly, Defendant cannot be subjected to a custodial interrogation without first being advised of his *Miranda* rights. *See, e.g., United States v. Vanover*, 630 F.3d 1108, 1114 (8th Cir. 2011). In this case, the recording shows Officer Savage walking back to the squad car with Defendant, with Defendant not being placed in the squad car for approximately an additional 30 seconds. Savage testified that he gave Defendant a *Miranda* warning during that time, and Defendant acknowledged that he understood his rights. The Court finds that Savage's testimony in that regard is credible. Accordingly, Defendant's *Miranda* argument falls on the facts.

### VI. RECOMMENDATION

For the reasons set forth above, it is respectfully **RECOMMENDED** that the Motion to Suppress (docket number 16) filed by the Defendant be **DENIED**.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court. *The parties are reminded that pursuant to Local Rule 72.1, "[a] party asserting such objections must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections."* Accordingly, if the parties are going to object to this Report

---

[12] Failure to brief an issue in more than a "perfunctory manner," allows a court to consider the issue waived. *Ramirez v. Debs-Elias*, 407 F.3d 444, 447 n.3 (1st Cir. 2005) (cited with approval in *United States v. Johnson*, 403 F. Supp. 2d 721, 764 (N.D. Iowa 2005)). *See also* Local Rule 7.d (requiring the movant to provide a brief containing "citations to the authorities upon which the moving party relies"); *Chay-Velasquez v. Ashcroft*, 367 F.3d 751, 756 (8th Cir. 2004) ("Since there was no meaningful argument on this claim in his opening brief, it is waived.").

*and Recommendation, they must promptly order a transcript of the hearing held on April 29, 2011.*

DATED this 10th day of May, 2011.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA